# IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

Opinion Number: 2010-NMSC-049

Filing Date: November 10, 2010

Docket No. 32,396

NEW ENERGY ECONOMY, INC.,

 Petitioner,

v.

HONORABLE WILLIAM W. SHOOBRIDGE,
Judge for New Mexico's Fifth Judicial District,

 Respondent,

and

SENATOR CARROLL H. LEAVELL, et al.,

 Real Parties in Interest,

<u>Consolidated with</u>:

Docket No. 32,409

NEW MEXICO ENVIRONMENTAL
IMPROVEMENT BOARD,

 Petitioner,

v.

HONORABLE WILLIAM W. SHOOBRIDGE,
Fifth Judicial District Judge,

 Respondent,

and

SENATOR CARROLL H. LEAVELL, et al.,

1

**Real Parties in Interest.**

**ORIGINAL PROCEEDINGS**

New Mexico Environmental Law Center
R. Bruce Frederick
Douglas Meiklejohn
Eric Jantz
Santa Fe, NM

for Petitioner New Energy Economy, Inc.

Gary K. King, Attorney General
Eric R. Miller, Assistant Attorney General
Stephen A. Vigil, Assistant Attorney General
Santa Fe, NM

for Petitioner New Mexico Environmental Improvement Board

Gary K. King, Attorney General
Nanette E. Erdman, Assistant Attorney General
Santa Fe, NM

for Respondent Honorable William W. Shoobridge

Montgomery & Andrews, P.A.
Louis W. Rose
Jeffrey J. Wechsler
Lara Katz
Santa Fe, NM

for Real Parties in Interest Senator Carroll H. Leavell, et al.

Miller Stratvert, P.A.
Richard L. Alvidrez
Albuquerque, NM

for Real Parties in Interest Public Service Company of New Mexico and
Southwestern Public Service Company

Vinson & Elkins, L.L.P.
Eric Groten
Bryan Moore
Austin, TX

for Real Party in Interest El Paso Electric Company

**OPINION**

**PER CURIAM.**

**{1}**      When the Legislature lawfully delegates authority to a state agency to promulgate rules and regulations, may a court intervene to halt proceedings before the agency adopts such rules or regulations?  This question is one of substantial public interest because court intervention in administrative proceedings before the adoption of rules or regulations may thwart the public's right to participate in such proceedings.  We hold that a court may not intervene in administrative rule-making proceedings before the adoption of a rule or regulation for three reasons.  First, the separation of powers doctrine forbids a court from prematurely interfering with the administrative processes created by the Legislature.  Second, only upon completion of administrative rule-making proceedings will a party be certain that it is aggrieved, since it is not known whether a regulation will even be adopted by the agency.  Third, since the administrative proceeding is not complete, there is no actual controversy to be resolved by a declaratory judgment action.

**I.      BACKGROUND**

**{2}**      The Legislature empowered the Environmental Improvement Board (Board) to prevent or abate air pollution and to adopt or promulgate regulations consistent with the Air Quality Control Act. NMSA 1978, § 74-2-5 (1967) (as amended through 2007).  This matter originated in a proposal to regulate greenhouse gas emissions that Petitioner New Energy Economy (New Energy) filed with the Board.  The Board held a public meeting on January 5, 2009 in Santa Fe to determine whether to hold a hearing on New Energy's proposed regulation.  At the hearing were representatives from the Public Service Company of New Mexico, the Dairy Producers of New Mexico, the New Mexico Oil and Gas Association, and the New Mexico Farm and Livestock Bureau, who asked the Board not to conduct a hearing, contending that the Board lacked the authority under the Air Quality Control Act, NMSA 1978, §§ 74-2-1 to -17 (1967) (as amended through 2007), to regulate greenhouse gas emissions unless it first established an ambient air quality standard.  The Board decided to allow briefing on the matter and scheduled a hearing on the issue of its jurisdiction and authority for April 6, 2009.

**{3}**      At the hearing on April 6, 2009 in Santa Fe, New Energy argued that (1) the Board had the authority to hold hearings on the matter, (2) the final regulation might vary from their proposed rule, and (3) the Board could adopt an ambient air quality standard in the rule-making context.  The Board determined that it had the required authority to hear the matter and entered an order establishing a hearing schedule.  The groups opposing the petition moved for a temporary stay of the proceedings and filed objections to the scheduling order.  On December 31, 2009, public notice was given on New Energy's proposed rule.  On January 13, 2010, those who had objected to the proposal during the hearings before the

Board and others (the plaintiffs) filed a complaint for a declaratory judgment and injunctive relief in the Fifth Judicial District Court in Lea County. The plaintiffs sought to enjoin the Board from conducting further administrative proceedings, arguing that the Board lacked statutory authority to consider or adopt New Energy's petition. New Energy and the Board filed motions to dismiss the action. The district court granted the plaintiffs' request for a preliminary injunction.

**{4}**     The Board and New Energy petitioned this Court for a writ of superintending control or prohibition and requested a stay of the district court proceedings. The plaintiffs, as real parties in interest, opposed Petitioners' requests. We reviewed the district court's decision to issue a preliminary injunction for an abuse of discretion. *LaBalbo v. Hymes*, 115 N.M. 314, 318, 850 P.2d 1017, 1021 (Ct. App. 1993). *See also Allstate Ins. Co. v. Firemen's Ins. Co.*, 76 N.M. 430, 433-34, 415 P.2d 553, 555 (1966); NMSA 1978, § 44-6-7 (1975). A misapprehension of the law constitutes an abuse of discretion. *See State v. Elinski*, 1997-NMCA-117, ¶ 8, 124 N.M. 261, 948 P.2d 1209. For the reasons that follow, we granted the writ of superintending control and ordered the district court to dissolve the injunction issued in the case, dismiss the complaint, and remand the case to the administrative agency for further proceedings.

## II.     DISCUSSION

**{5}**     The central issue is whether the district court erred in granting a preliminary injunction enjoining the Board from completing the rule-making process. The plaintiffs contend that the issue is answered by *State ex rel. Hanosh v. Environmental Improvement Board* [hereinafter *Hanosh I*], 2008-NMCA-156, ¶ 8, 145 N.M. 269, 196 P.3d 970, *affirmed by State ex rel. Hanosh v. King* [hereinafter *Hanosh II*], 2009-NMSC-047, 147 N.M. 87, 217 P.3d 100.

**{6}**     In the two *Hanosh* cases, the district court was asked to construe a statute to determine whether the Environmental Improvement Board was acting within its legislative authority when it adopted regulations addressing automobile emissions. We affirmed the Court of Appeals, holding that a declaratory judgment action is an appropriate procedure to challenge the Board's statutory authority to adopt regulations. *Hanosh I*, 2008-NMCA-156, ¶ 8; *Hanosh II*, 2009-NMSC-047, ¶ 4. Under the circumstances of *Hanosh II*, we agreed that the plaintiffs could raise a purely legal challenge to the Board's statutory authority independent of the administrative appeal process. 2009-NMSC-047, ¶ 4.

**{7}**     The plaintiffs argue that this case is precisely like the *Hanosh* cases because in *Hanosh I* the Board was in the process of considering proposed regulations when the plaintiffs filed their complaint seeking a declaratory judgment. They contend that because we upheld the *Hanosh I* court's jurisdiction to entertain the action, reasoning that the question before it was purely legal and did not require "special agency expertise or additional fact-finding," the court in this case should have the same authority. 2008-NMCA-156, ¶ 8.

4

**{8}** We do not find the *Hanosh* cases controlling. Although the complaint in the *Hanosh* cases was filed before the adoption of the regulations, those regulations were adopted on the same day the plaintiffs delivered their complaint to the Board. *Hanosh I*, 2008-NMCA-156, ¶ 1. Thus, the Board had actually issued a regulation at the time the district court heard the challenge to the regulation. This fact distinguishes the *Hanosh* cases from the one before us. Our holding in both *Hanosh I* and *II* should not be cited for the proposition that a court may intervene to halt an administrative rule-making proceeding before a rule or regulation is adopted.

**{9}** In addition, while we agree that the Board was not engaged in adjudicative fact-finding, the Board was attempting to hold hearings to develop legislative facts.

> Unlike adjudicative facts, legislative facts do not concern individual parties, such as who did what, when, where, and how. . . . Legislative facts are those which help the tribunal to determine the content of law and policy and to exercise its judgment or discretion in determining what course of action to take.

*Quynh Truong v. Allstate Ins. Co.*, 2010-NMSC-009, ¶ 25, 147 N.M. 583, 227 P.3d 73 (quoting *Lee v. Martinez,* 2004-NMSC-027, ¶ 13, 136 N.M. 166, 96 P.3d 291 (internal quotation marks and citations omitted)). The interruption of this process of legislative fact-finding interfered with the Board's duty, mandated by the Legislature, to hold public hearings before regulations are adopted. *See* NMSA 1978, § 74-1-9 (1985); NMSA 1978, § 74-2-6 (1992). This process constitutes an essential part of the legislative branch's function to make policy choices. *See State ex rel. Haragan v. Harris*, 1998-NMSC-043, ¶ 23, 126 N.M. 310, 968 P.2d 1173 (Serna, J., dissenting) ("The New Mexico Constitution establishes the legislative branch as the entity to represent the collective will of the populace for purposes of creating laws to effectuate the public policy of the State.").

## A.      Separation of Powers

**{10}** Although we have never specifically stated that our cases addressing the relationship between administrative proceedings and declaratory judgment actions are controlled by the doctrine of separation of powers, that doctrine has been implicit in our reasoning. When we wrote in *Smith v. City of Santa Fe*, 2007-NMSC-055, ¶ 15, 142 N.M. 786, 171 P.3d 300, that the Declaratory Judgment Act provides an alternative means of challenging an administrative entity's authority to adopt a regulation, we cautioned

> against using a declaratory judgment action to challenge or review administrative actions if such an approach would foreclose any necessary fact-finding by the administrative entity, discourage reliance on any special expertise that may exist at the administrative level, disregard an exclusive statutory scheme for the review of administrative decisions, or circumvent procedural or substantive limitations that would otherwise limit review

5

through means other than a declaratory judgment action.

*Id.* We repeated this admonition in *Stennis v. City of Santa Fe*, 2008-NMSC-008, ¶ 3, 143 N.M. 320, 176 P.3d 309 and *State ex rel. Regents of Eastern New Mexico University v. Baca*, 2008-NMSC-047, ¶ 20, 144 N.M. 530, 189 P.3d 663 (per curiam). The caution we gave against using judicial action to circumvent the requirements of administrative proceedings authorized by the Legislature defers to the legislative process that creates an agency and empowers it to adopt rules or regulations to carry out its powers.

**{11}** Most of our recent cases addressing the interaction of declaratory judgment actions and administrative proceedings involved administrative adjudications; that is, the application of existing law to the facts of a particular matter. *See, e.g.*, *Baca*, 2008-NMSC-047, ¶ 3 (concerning the construction of a contract in the context of a bid protest by the unsuccessful party); *Stennis*, 2008-NMSC-008, ¶ 11 (involving a dispute over whether city ordinance requiring a permit to drill a domestic well applied to the plaintiff); *Smith*, 2007-NMSC-055, ¶ 1 (addressing whether the City of Santa Fe could adopt an ordinance requiring a particular plaintiff to obtain a city permit for a domestic well).

**{12}** In those cases, we concluded that when the matter at issue (1) is purely legal, (2) requires no specialized agency fact-finding, and (3) there is no exclusive statutory remedy, it is a proper matter for a declaratory judgment action and does not require exhaustion of administrative remedies. *Smith*, 2007-NMSC-055, ¶¶ 17, 27. Even when the questions to be addressed were purely legal, however, we have held that a party who initiated the appeals process in an administrative action could not use a declaratory judgment action to circumvent the requirements of an administrative appeal. *See Baca*, 2008-NMSC-047, ¶ 22 (requiring the plaintiff, who had initiated the appeals process to resolve a purely legal issue, to file the action in the judicial district where appellate review of the administrative action would have taken place); *Smith*, 2007-NMSC-055, ¶ 23 (requiring the plaintiff, who had initiated the appeals process to resolve a purely legal issue, to comply with the time limits for judicial review, but holding such restrictions did not apply to the plaintiff who had not initiated the appeals process); *Stennis*, 2008-NMSC-008, ¶¶ 2-3 (permitting a declaratory judgment action to resolve a purely legal matter when no appeals process had been initiated).

**{13}** In all of these cases, we acknowledged that in creating the declaratory judgment action, the Legislature provided, in relevant part, that "[a]ny person . . . whose rights . . . are affected by a statute, municipal ordinance, contract or franchise, may have determined any question of construction . . . arising under the . . . statute, ordinance, contract or franchise and obtain a declaration of rights, status or other legal relations thereunder." NMSA 1978, § 44-6-4 (1975). We also implicitly recognized that the Legislature has frequently delegated to administrative agencies the authority to resolve disputes involving its expertise arising under specific statutes and regulations.

**{14}** The limitations we have placed on the use of the declaratory judgment action respect the role of each branch of government in the constitutional scheme and the administrative

6

processes put in place by the Legislature. Article III, Section 1 of the New Mexico Constitution divides state government into "three distinct departments, the legislative, executive and judicial." Although we have recognized "that the constitutional doctrine of separation of powers permits some overlap of governmental functions," *State ex rel. Taylor v. Johnson*, 1998-NMSC-015, ¶ 23, 125 N.M. 343, 961 P.2d 768, it remains true that "[w]ithin our constitutional system, each branch of government maintains its independent and distinct function." *Id.* ¶ 21 (citing *State v. Fifth Judicial Dist. Court*, 36 N.M. 151, 153, 9 P.2d 691, 692 (1932) for the proposition that "[t]he Legislature makes, the executive executes, and the judiciary construes the laws."). Within this constitutional scheme, we have recognized the Legislature's power to delegate both adjudicative and rule-making power to administrative agencies. *See Bd. of Educ. of Carlsbad Mun. Sch. v. Harrell*, 118 N.M. 470, 483-84, 882 P.2d 511, 524-25 (1994) (citing *Wylie Corp. v. Mowrer*, 104 N.M. 751, 753, 726 P.2d 1381, 1383 (1986)), for the proposition that the Legislature may delegate adjudicatory power to agencies); *Duke City Lumber Co. v. N.M. Envtl. Improvement Bd.*, 101 N.M. 291, 292, 681 P.2d 717, 718 (1984) (observing that the Legislature "grants agencies the discretion of promulgating rules and regulations which have the force of law"). Courts should not intervene to halt administrative hearings before rules or regulations are adopted. To do so would thwart the public's opportunity to participate in rule-making. Because of the necessity to respect the separate branches of government, courts should not intervene to halt administrative hearings before rules or regulations are adopted. To do so could deprive the public of the opportunity to propose rules or regulations and otherwise participate in the rule-making process. In addition, the administrative agency should be given the opportunity to correct any errors that have been brought to its attention during the course of such proceedings.

**B.      Because the Administrative Proceedings Were Not Complete, the Declaratory Judgment Action Was Not Ripe, and There Was Not an Actual Controversy**

**{15}**      Petitioners argue that because the rule-making process was incomplete, there was no final agency action, and the declaratory judgment action was premature and not ripe for review. They note that in the context of judicial review of administrative regulations, the United States Supreme Court has adopted a two-part test to determine whether a regulation is ripe for review. *See Abbott Labs. v. Gardner*, 387 U.S. 136, 149 (1967) (holding that a court must "evaluate both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration"), *abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99, 105 (1977). In applying the first prong, the Court determined that a rule was ripe for review before it was enforced, but did not go so far as to state such a matter was ripe before it has been promulgated. *See Abbott*, 387 U.S. at 151. We have relied on the first prong of the *Abbott* test to explain that the doctrine of ripeness "prevent[s] the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized." *See U.S. West Commc'ns, Inc. v. N.M. State Corp. Comm'n*, 1998-NMSC-032, ¶ 8, 125 N.M. 798, 965 P.2d 917 (quoting *Abbott*, 387 U.S. at 148-49 (internal quotation marks omitted)).

7

**{16}** The plaintiffs respond that a ripeness analysis is not applicable in this case because the federal doctrine of ripeness relied on by Petitioners has no basis in the New Mexico Constitution. We agree that the New Mexico Constitution does not expressly impose a "cases or controversies" limitation on state courts like that imposed upon the federal judiciary by Article III, Section 2 of the United States Constitution. However, we have also held that the judicial power to resolve disputes in a government built upon a foundation separating the legislative, executive, and judicial functions should be "guided by prudential considerations." *N.M. Right to Choose/NARAL v. Johnson,* 1999-NMSC-005, ¶¶ 12-13, 126 N.M. 788, 975 P.2d 841. Indeed, "prudential rules" of judicial self-governance, like standing, ripeness, and mootness, are "founded in concern about the proper—and properly limited—role of courts in a democratic society" and are always relevant concerns. *Warth v. Seldin*, 422 U.S. 490, 498 (1975). *See also Schlesinger v. Reservists Comm. to Stop the War*, 418 U.S. 208, 221-27 (1974).

**{17}** The Declaratory Judgment Act itself requires the presence of an "actual controversy" before a district court can assume jurisdiction in a declaratory judgment action. *See* NMSA 1978, § 44-6-2 (1975). In the absence of any actual case or controversy, it is improper to issue a declaratory judgment. *Yount v. Millington*, 117 N.M. 95, 103, 869 P.2d 283, 291 (Ct. App. 1993). One of the "prerequisites of 'actual controversy' warranting consideration in a declaratory judgment action [is that] . . . the issue involved must be ripe for judicial determination." *Sanchez v. City of Santa Fe*, 82 N.M. 322, 324, 481 P.2d 401, 403 (1971).

**{18}** Thus, even if a purely legal question is presented for declaratory judgment, it is not justiciable unless it is ripe. In *Yount*, our Court of Appeals wrote that "'[t]he mere possibility or even probability that a person may be adversely affected in the future by official acts' fails to satisfy the actual controversy requirement." 117 N.M. at 103, 869 P.2d at 291 (citing with approval a clarification of the "actual controversy" requirement set out in *Dawson v. Department of Transportation*, 480 F. Supp. 351, 352 (W.D. Okla. 1979)). In the instant case, the proposed regulation was the subject of public hearings, and the final version, if one emerges from the process, is unknown. It is only upon the adoption of a regulation that the parties can be certain that they are aggrieved and that there is an actual controversy.

**{19}** Under these circumstances, the question of whether the Board's rule-making actions exceeded its legislative authority is not ripe for judicial review because no final rule-making action occurred. Judicial action that disrupts the administrative process before it has run its course intrudes on the power of another branch of government. Therefore, we use our power of superintending control to prevent the judicial branch from interfering with the administrative process. *See In re Extradition of Martinez*, 2001-NMSC-009, ¶ 17, 130 N.M. 144, 20 P.3d 126 (stating that "the substantial separation of powers concerns . . . provide the requisite level of injury necessary for the issuance of the writ").

## III. CONCLUSION

**{20}** Because judicial action in this matter interfered with the processes of another branch of government, we exercise our power of superintending control and order the district court to dismiss the complaint, dissolve the preliminary injunction, and remand the matter to the administrative agency.

**{21}    IT IS SO ORDERED.**

_____
**CHARLES W. DANIELS, Chief Justice**


_____
**PATRICIO M. SERNA, Justice**


_____
**PETRA JIMENEZ MAES, Justice**


_____
**RICHARD C. BOSSON, Justice**


_____
**EDWARD L. CHÁVEZ, Justice**


**Topic Index for *New Energy Economy, Inc. v. Shoobridge*, Docket No. 32,396 and *NMIEB v. Shoobridge,* Docket No. 32,409**

| | |
|---|---|
| **AL** | **ADMINISTRATIVE LAW AND PROCEDURE** |
| AL-AA | Administrative Appeal |
| AL-AL | Administrative Law, General |
| AL-JR | Judicial Review |
| AL-RU | Rules |
| | |
| **AE** | **APPEAL AND ERROR** |
| AE-AJ | Appellate Jurisdiction |
| | |
| **CT** | **CONSTITUTIONAL LAW** |
| CT-CG | Constitutional Law, General |
| CT-RP | Ripeness |
| CT-SP | Separation of Powers |
| | |
| **CU** | **COURTS** |
| CU–IP | Inherent Powers |
| | |
| **JG** | **JUDGES** |
| JG-AD | Abuse of Discretion |

**JM**         **JUDGMENT**
JM-DJ      Declaratory Judgment

**JD**         **JURISDICTION**

JD-AJ      Appellate Jurisdiction
JD-DC     District Court
JD-SC     Supreme Court
JD-SM    Subject Matter