IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

Opinion Number: 2012-NMSC-039

Filing Date: November 1, 2012

Docket No. 32,704

TRI-STATE GENERATION AND
TRANSMISSION ASSOCIATION, INC.,

      Plaintiff-Respondent and Cross-Petitioner,

v.

JOHN D'ANTONIO, JR.,
NEW MEXICO STATE ENGINEER,

      Defendant-Petitioner and Cross-Respondent.

ORIGINAL PROCEEDING ON CERTIORARI
Matthew G. Reynolds, District Judge

Gary K. King, Attorney General
Stephen Robert Farris, Assistant Attorney General
Sarah A. Bond, Assistant Attorney General
D.L. Sanders, Special Assistant Attorney General
Santa Fe, NM

for Petitioner and Cross-Respondent

Rodey, Dickason, Sloan, Akin & Robb, P.A.
Sunny J. Nixon
Thomas A. Outler
Santa Fe, NM

Richard Allan Simms
Mesa, AZ

for Respondent and Cross-Petitioner

Hennighausen & Olsen, L.L.P.
Arnold J. Olsen
Alvin F. Jones

1

Roswell, NM

for Amicus Curiae Pecos Valley Artesian Conservancy District

Law Office of Steven L. Hernandez, PC
Steven L. Hernandez
Las Cruces, NM

Law Office of Beverly Singleman
Beverly J. Singleman
Mesilla Park, NM

for Amici Curiae Elephant Butte Irrigation District and Carlsbad Irrigation District

Peters Law Firm, LLC
Lee E. Peters
Las Cruces, NM

for Amicus Curiae New Mexico Cattle Growers Association

**OPINION**

**DANIELS, Justice.**

**{1}**     This case calls upon us to determine whether NMSA 1978, Section 72-2-9.1 (2003), provided a constitutional delegation of authority for the Office of the State Engineer to adopt new regulations to administer water resources according to administrative interim priority determinations based on a number of factors.  The district court and Court of Appeals concluded that it did not and that the State Engineer's lawful authority to supervise water allocations can be exercised only on the basis of licenses issued by the State Engineer and adjudications in court.

**{2}**     We reverse and hold that the Legislature delegated lawful authority to the State Engineer to promulgate the challenged water administration regulations.  We also hold that the regulations are not unconstitutional on separation of powers, due process, or vagueness grounds.

**I.     BACKGROUND**

**{3}**     In 2003, the New Mexico Legislature enacted Section 72-2-9.1 to address a legislative concern that

> the adjudication process is slow, the need for water administration is urgent,
> compliance with interstate compacts is imperative and the state engineer has

2

authority to administer water allocations in accordance with the water rights priorities recorded with or declared or otherwise available to the state engineer.

*See* § 72-2-9.1(A); *accord* 2003 N.M. Laws, ch. 63, § 1.A. To address these concerns, the Legislature directed the State Engineer to

> adopt rules for priority administration to ensure that authority is exercised:
> (1) so as not to interfere with a future or pending adjudication;
> (2) so as to create no impairment of water rights, other than what is
> required to enforce priorities; and
> (3) so as to create no increased depletions.

*See* § 72-2-9.1(B); *accord* 2003 N.M. Laws, ch. 63, § 1.B.

**{4}** In response, the State Engineer developed the Active Water Resource Management regulations (AWRM), 19.25.13.1-.50 NMAC (12/30/2004). *See* 19.25.13.6 NMAC ("[AWRM] fulfill[s] the mandates of Section 72-2-9.1 NMSA, requiring the state engineer to adopt rules for priority administration.").

**{5}** Under AWRM, the State Engineer identifies water districts in need of management and appoints a water master to manage these districts. *See* 19.25.13.12 NMAC (creating water master districts); 19.25.13.15(B) NMAC (appointing water masters); *see also* 19.25.13.16 NMAC (providing for the general authority of a water master). The water master evaluates the available water supply in the district and then manages that supply according to users' priority dates, which necessarily involves denying water to junior users in favor of senior users when the supply is insufficient. *See* 19.25.13.17(H) NMAC (providing for the administration of water deliveries based on priority).

**{6}** In order to carry out this interim priority management, AWRM establishes "administrable water rights." *See* 19.25.13.16(B) NMAC (providing authority to the water master to implement the administration of water in accordance with administrable water rights); *see also* 19.25.13.7(B) NMAC (defining an "administrable water right" as a "water right or right to impound, store or release water, the elements of which have been determined by a court of competent jurisdiction or determined on an interim basis by the state engineer under these rules and regulations"). The State Engineer determines the elements of each user's administrable water right, including its priority date, using a hierarchy of the best available evidence, in the following order: (A) a final decree from an adjudication, (B) a subfile order from an adjudication, (C) an offer of judgment from an adjudication, (D) a hydrographic survey, (E) a license issued by the State Engineer, (F) a permit issued by the State Engineer, and (G) a determination by the State Engineer using "the best available evidence" of historic, beneficial use. *See* 19.25.13.27(A)-(G) NMAC. Once determined, a district's priority dates are published and are subject to appeal. *See* 19.25.13.27 NMAC.

**{7}** Tri-State Generation and Transmission Association, Inc., an electric power cooperative that holds water rights, filed a district court action challenging the regulations on statutory interpretation, separation of powers, due process, and vagueness grounds. The district court struck down portions of AWRM as unconstitutional, finding that Section 72-2-9.1 violated Article III, Section 1 of the New Mexico Constitution because the Legislature did not provide any meaningful standard by which the State Engineer could determine and enforce priorities. In order to construe Section 72-2-9.1 as constitutional, the district court adopted Tri-State's position that the State Engineer's only source of authority for priority administration was the century-old statute relating to licenses and adjudications, NMSA 1978, Section 72-2-9 (1907): "The state engineer shall have the supervision of the apportionment of water in this state according to the licenses issued by him and his predecessors and the adjudications of the courts." Accordingly, the district court limited the types of evidence the State Engineer could consider under AWRM in determining administrable water rights to final decrees, subfile orders, and offers of judgment, all resulting from the adjudication process, 19.25.13.27(A)-(C) NMAC, and to licenses issued by the State Engineer, 19.25.13.27(E) NMAC, concluding that the remaining types of evidence in 19.25.13.27(D) & (F)-(G) NMAC were unconstitutional. The district court also concluded that the appeal procedures for priority determinations were too slow to provide adequate due process and violated state constitutional guarantees that water priorities be determined by inter se[1] adjudications.

**{8}** The Court of Appeals affirmed the district court in part, holding that the Legislature granted no new authority in Section 72-2-9.1 for the State Engineer to adopt the challenged regulations. *Tri-State Generation & Transmission Ass'n, Inc. v. D'Antonio*, 2011-NMCA-015, ¶¶ 29-30, 35, 149 N.M. 394, 249 P.3d 932 ("[E]ven if the Legislature had intended that the State Engineer adopt a regulation such as 19.25.13.27 NMAC [to administer priorities beyond licenses and adjudications], the Legislature did not provide the statutory framework for the State Engineer to do so, and the regulation unconstitutionally exceeds the State Engineer's authority."). The Court of Appeals differed from the district court and held that subfile orders, 19.25.13.27(B) NMAC, and offers of judgment, 19.25.13.27(C) NMAC, could not be considered. *See Tri-State*, 2011-NMCA-015, ¶¶ 30, 32 ("We clarify that the State Engineer has the statutory authority to consider adjudication decrees and its own licenses, but not subfile orders or offers of judgment filed in an adjudication.").

**{9}** The Court of Appeals reversed as speculative the district court's ruling on due process. *See id.* ¶ 36 ("[W]e consider it speculative to address issues of due process when

---

[1]Inter se is defined as "between or among themselves." Bryan A. Garner, *A Dictionary of Modern Legal Usage* 463 (2d ed. 1995). In terms of water rights, inter se adjudications provide the opportunity for parties to dispute the determination of their water rights among each other and not simply challenge their individual claims with the State Engineer. *See, e.g.*, Rule 1-071.2 NMRA (defining inter se procedures for the adjudication of stream system priorities).

the regulations not only have not yet been applied but also, based on our holding, will not be applied in their current form."); *see also id.* ¶¶ 21-22 (recognizing due process protections within licensing and adjudications).

**{10}** We granted both the State Engineer's petition and Tri-State's cross petition for writs of certiorari to review the decisions below.

## II.    STANDARD OF REVIEW

**{11}** We review questions of statutory and constitutional interpretation de novo. *See N.M. Bd. of Veterinary Med. v. Riegger*, 2007-NMSC-044, ¶¶ 11, 27, 142 N.M. 248, 164 P.3d 947.

## III.   DISCUSSION

### A.    AWRM Does Not Violate Constitutional Separation of Powers Principles.

**{12}** Tri-State argues that AWRM violates constitutional separation of powers principles because the Legislature did not provide new authority for the State Engineer to adopt AWRM and, even if the Legislature attempted to grant such authority, AWRM impermissibly usurps the power of the judiciary to oversee the determination of water priorities by adjudication. For the reasons that follow, we disagree with both positions.

### 1.    Section 72-2-9.1 Provided New Regulatory Authority to the State Engineer.

**{13}** We first address whether Section 72-2-9.1 authorized the State Engineer to adopt AWRM. "Agencies are created by statute, and limited to the power and authority expressly granted or necessarily implied by those statutes." *Qwest Corp. v. N.M. Pub. Regulation Comm'n*, 2006-NMSC-042, ¶ 20, 140 N.M. 440, 143 P.3d 478. Separation of powers principles are violated when "an administrative agency goes beyond the existing New Mexico statutes or case law it is charged with administering and claims the authority to modify this existing law or to create new law on its own." *State ex rel. Sandel v. N.M. Pub. Util. Comm'n*, 1999-NMSC-019, ¶ 12, 127 N.M. 272, 980 P.2d 55.

**{14}** The parties disagree as to what the Legislature meant when referring to "authority" in Subsections A and B of 72-2-9.1:

> A.    The legislature recognizes that . . . the state engineer *has authority* to administer water allocations in accordance with the water right priorities recorded with or declared or otherwise available to the state engineer.
>
> B.    The state engineer shall adopt rules for priority administration to ensure *that authority* is exercised . . . .

(Emphasis added.)

5

**{15}**     The State Engineer argues that "has authority" in Section 72-2-9.1(A) should be read as either a new delegation of authority or a recognition of the existing broad authority of the State Engineer over our state's water resources but that either reading should be interpreted as a constitutional delegation of power, relying on *Old Abe Co. v. N.M. Mining Comm'n*, 121 N.M. 83, 96, 908 P.2d 776, 789 (1995) ("There is a strong presumption supporting the constitutionality of a statute or an administrative regulation.").

**{16}**     The district court agreed instead with Tri-State's argument that "has authority" in Section 72-2-9.1(A) should be read as a legislative reference to the previously existing authority of the State Engineer to supervise the appropriation of water through licenses and adjudications under Section 72-2-9.

**{17}**     The Court of Appeals agreed with the district court, interpreting the statutory language to mean that "the Legislature believed that the State Engineer already had the necessary authority to adopt rules to administer water right priorities . . . and that, as a result, the Legislature did not need to expand upon the State Engineer's authority in order to accomplish its purpose." *Tri-State*, 2011-NMCA-015, ¶ 17.  We differ with the statutory interpretations of both lower courts.

### a.     The Title of the 2003 Enacting Legislation Indicated a Clear Intent by the Legislature to Expand the Authority of the State Engineer.

**{18}**     "[W]hen presented with a question of statutory construction, we begin our analysis by examining the language utilized by the Legislature, as the text of the statute is the primary indicator of legislative intent." *Bishop v. Evangelical Good Samaritan Soc.*, 2009-NMSC-036, ¶ 11, 146 N.M. 473, 212 P.3d 361.  "For the purpose of determining the legislative intent we may look to the title, and ordinarily it may be considered as a part of the act if necessary to its construction." *State v. Richardson*, 48 N.M. 544, 549, 154 P.2d 224, 227 (1944); *see also* Norman J. Singer, *Sutherland Statutory Constr.* § 18:7, at 78-79 (7th ed. 2009) ("[T]he title of a statute may be used as an aid to construe the statute even though it is not dispositive on the issue of legislative intent.  . . . A statute's title may be used only to resolve existing doubts or ambiguities as to the statutory meanings and not to create ambiguity where none existed.").  "Headings and titles may not be used in construing a statute or rule unless they are contained in the enrolled and engrossed bill or rule as adopted." NMSA 1978, § 12-2A-13 (1997); *see Black's Law Dictionary* 186 (9th ed. 2009) (defining an "engrossed bill" as a "bill in a form ready for final passage by a legislative chamber" and an "enrolled bill" as a "bill passed by both houses of the legislature and signed by their presiding officers").

**{19}**     The enacting legislation for Section 72-2-9.1, Senate Bill 551, was entitled, "An Act Relating to Water; *Providing Authority for* State Engineer Priority Administration and Expedited Water Marketing and Leasing." 2003 N.M. Laws, ch. 63, § 1 (emphasis added). Because Senate Bill 551 met the enrolled and engrossed requirements for use in statutory construction, we consider its title in determining legislative intent.  *See* S.B. 551, 46th Leg.,

6

1st Reg. Sess. (N.M. 2003); *accord* 2003 N.M. Laws, ch. 63, § 1.

**{20}**    Turning to the dictionary for guidance, *see State v. Nick R.*, 2009-NMSC-050, ¶ 18, 147 N.M. 182, 218 P.3d 868 (using the dictionary as a tool in determining the ordinary meaning of words for legislative intent), "provide" means "make available for use; supply." *New Oxford American Dictionary* 1406 (3d ed. 2010). Thus, the plain meaning of the enacting legislation for Section 72-2-9.1 is clear: The Legislature was providing new authority to the State Engineer to carry out priority administration responsibilities. Because Section 72-2-9.1 is a delegation of new authority, it is not limited by the State Engineer's existing authority in Section 72-2-9.

**b.    The Compilation Commission's Independent Numbering and Placement of the New Legislation After Enactment Provides No Guide to Legislative Intent.**

**{21}**    We also address a potential misunderstanding that may result from the statute number assigned by the New Mexico Compilation Commission to the 2003 enactment after its passage. The fact that the Compilation Commission assigned the statutory number of 72-2-9.1 to Chapter 63, Section 1 of New Mexico Laws of 2003 provides no basis for an inference that the Legislature intended the new legislation to be limited by the subject matter or contents of 72-2-9 as our lower courts concluded. *See, e.g.*, *Tri-State*, 2011-NMCA-015, ¶ 27 ("[S]ection 72-2-9 is specific as to the authority addressed by the Legislature in Section 72-2-9.1 and restricts the State Engineer's general supervisory authority to apportion the waters of the state to licenses and court adjudications.").

**{22}**    Where the Legislature determines a particular "position of an act within the entire body of statutory enactment[,] . . . the location of the new statute in the code will necessarily be considered as an indication of which is the related legislation." Singer, *supra*, § 21:3, at 166. But in this case, the enacting legislation neither assigned statutory section number 72-2-9.1 nor provided any specific instruction on its placement in Chapter 72, stating only generally that "[a] new section of Chapter 72 NMSA 1978 is enacted." *See* 2003 N.M. Laws, ch. 63, § 1; *compare with* 2003 N.M. Laws, ch. 298, § 2 (providing a specific codification instruction by the Legislature for a new law on domestic wells to become a subset of an existing, more general statute: "A new Section 72-12-1.1 NMSA 1978 is enacted.").

**{23}**    In the absence of a specific statutory direction, no formal rules govern the placement of newly enacted laws within our statutory code by the Compilation Commission. *See* NMSA 1978 §§ 12-1-1 to -14 (2006) (providing the statutory duties and powers of the Compilation Commission). With only a general instruction from the Legislature to place the legislation as a "new section" in Chapter 72, our state's statutory code dealing with water law, the Compilation Commission independently placed the statute immediately after Section 72-2-9 and independently assigned its compilation number as 72-2-9.1.

**{24}**    The falsity of any inference that, as a result of the Compilation Commission's

numbering and placement, the existing Section 72-2-9 somehow exercises a limitation on the scope of the new Section 72-2-9.1 is better understood when one considers the Compilation Commission's numbering of Section 72-2-9.2 (2003), which directs the State Engineer to purchase, install, and study prototype devices for measuring river flows on a real-time basis. Like Section 72-2-9.1, Section 72-2-9.2 was enacted in 2003 with only a general codification instruction that it become a "new section of Chapter 72." *See* 2003 N.M. Laws, ch. 209, § 1. Yet if we were to read Section 72-2-9 as controlling Section 72-2-9.2, then the State Engineer would be able to install and study these measuring devices only in regard to the apportionment of waters through licenses and adjudications and not as part of the State Engineer's broad supervisory powers over the water resources of New Mexico. *See* NMSA 1978, § 72-2-1 (1982) ("There shall be a 'state engineer' who . . . has general supervision of waters of the state and of the measurement, appropriation, distribution thereof and such other duties as required."). Such a restrictive reading would make no sense. *See* NMSA 1978, § 12-2A-18(A)(3) (1997) (providing that a statute is construed when possible to avoid an absurd result).

**{25}**     The Legislature's instruction that Section 72-2-9.1 was to become a new section of Chapter 72 rather than a subcategory of an existing section supports the plain meaning of the enacting legislation's title: that the Legislature was providing new authority to the State Engineer to adopt rules for interim priority management.

**{26}**     Based on these directives, we conclude that the phrase "has authority" in Section 72-2-9.1(A) should be construed as a constitutional conveyance of authority rather than the restrictive view adopted by our lower courts. *See, e.g.*, *Tri-State*, 2011-NMCA-015, ¶ 28 ("[H]ad the Legislature wished to grant the State Engineer such authority for determining priorities, it would have done so in direct, clear, and certain terms, rather than merely directing the State Engineer to adopt regulations consistent with the State Engineer's existing authority."). Our constitutional reading of additional duties complements the broad, supervisory powers conveyed by the State Engineer's enabling act. *See* NMSA 1978, § 72-2-1 (1987). By contrast, the lower courts' view restricting Section 72-2-9.1 to the already existing powers under Section 72-2-9 renders Section 72-2-9.1 devoid of purpose, in conflict with the plain language of Section 72-2-9.1(B) directing the State Engineer to adopt rules for priority administration specifically outside of the adjudication process. *See* § 72-2-9.1(B)(1) ("The state engineer shall adopt rules for priority administration to ensure that authority is exercised . . . so as not to interfere with a future or pending adjudication."); *compare with* NMSA 1978, §§ 72-4-15 to -19 (1965) (providing the statutory authority for determining water rights through adjudications).

## 2.     AWRM Does Not Conflict with the Role of the Judiciary in Inter Se Adjudications.

**{27}**     Tri-State raises a second separation of powers claim that also serves as the basis of its due process argument: Regardless of whether Section 72-2-9.1 was intended by the Legislature to convey new authority to the State Engineer, AWRM is unconstitutional

because water priorities can be determined only by inter se adjudication in the courts. The Court of Appeals rejected Tri-State's reasoning. *See Tri-State*, 2011-NMCA-015, ¶ 6 ("The New Mexico Constitution contains nothing to indicate that determination of the elements of a water right is consigned exclusively to the judicial branch."). We agree with the Court of Appeals.

**{28}** Tri-State relies primarily on *State ex rel. Reynolds v. Pecos Valley Artesian Conservancy Dist.* (*PVACD*), 99 N.M. 699, 701, 663 P.2d 358, 360 (1983) ("[T]here can be no administration of junior rights as against senior rights until the parties have had an opportunity to contest priorities *inter se*.") Tri-State's reliance on *PVACD* is misplaced.

**{29}** In *PVACD*, this Court addressed whether an adjudicatory procedure violated due process because a portion of Carlsbad Irrigation District water users with priority dates junior to January 1, 1947, were required to individually demonstrate to the State Engineer why their use should not be enjoined when the inter se adjudication of all users on the stream system had yet to be finalized. *Id.* at 700-01, 663 P.2d at 359-60. The *PVACD* Court held that the interim order and any resulting curtailment of junior water rights to serve senior users did not violate due process because nothing in our state's adjudication statutes precluded the administration of water rights prior to the filing of a final adjudicatory decree. *Id.* at 701, 663 P.2d at 360.

**{30}** Although Tri-State is correct in noting that the *PVACD* Court stated, "We agree that there can be no administration of junior rights as against senior rights until the parties have had an opportunity to contest priorities *inter se*," the full context of this statement must be considered. First, the sentence Tri-State quotes is followed by the statements, "We do not agree that such administration must await the filing of a final decree. There is nothing in the statute which precludes the administration of water rights prior to the time of the filing of the final decree in the office of the State Engineer." *Id.* Thus, the *PVACD* Court reached the opposite conclusion: The administration of priorities was permissible before final adjudication.

**{31}** More crucial is that Tri-State overlooks a second consideration. *PVACD* addressed the constitutionality of our adjudication statutes in 1983. The statute at issue in this case, Section 72-2-9.1, was enacted twenty years later and with the specific purpose of addressing priority administration outside of the adjudication process. Accordingly, *PVACD* is simply not applicable. Even if the question remained as to whether the State Engineer could enforce priority administration following *PVACD*, the Legislature answered this question in the affirmative by its express delegation of authority in Section 72-2-9.1, as we have already explained.

**{32}** We agree with Tri-State that the State Engineer lacks the authority to adjudicate water rights. *See, e.g.*, NMSA 1978, § 72-4-15 (1907) (directing the attorney general to "enter suit on behalf of the state" for the determination of all rights to use water in a particular stream system); *accord State ex rel. Reynolds v. Lewis*, 84 N.M. 768, 772, 508

9

P.2d, 577, 581 (1973) ("We note that, under our laws, only the courts are given the power and authority to adjudicate water rights."). But whether the State Engineer may adjudicate water rights is not the issue before us; rather, we are addressing the State Engineer's statutory authority to administer water outside of the adjudication process. *See Black's Law Dictionary* 47 (defining "adjudicate" as "rule upon judicially"); *compare with The New Shorter Oxford English Dictionary* 28 (4th ed. 1993) (defining "administer" as "[m]anage as a steward").

**{33}** Despite Tri-State's characterization that AWRM would transform the State Engineer into a judicial officer performing an adjudicatory function in violation of separation of powers guarantees, nothing in the New Mexico Constitution establishes a right to an inter se adjudication of priority. *See* N.M. Const. Art. XVI. Rather, as *PVACD* correctly recognized, the adjudication of water rights is a creature of statute. *See* §§ 72-4-15 to -19; *see also PVACD*, 99 N.M. at 700, 663 P.2d at 359 (recognizing the adjudication of the Pecos River "in accordance with the provisions of NMSA 1978, Sections 72-4-15 through 72-4-19"). While the statutory adjudication process serves an essential function in the final determination of water rights, Tri-State offers no applicable support for its proposition that water priorities can be managed by the State Engineer only after an inter se adjudication.

**{34}** The New Mexico Constitution provides in broad terms that the waters of the state are "to be subject to appropriation for beneficial use, in accordance with the laws of the state." N.M. Const. art. XVI, § 2. Conforming with this constitutional mandate, the Legislature has delegated the complicated and difficult task of managing New Mexico's scarce water resources to the State Engineer, as this Court recently reaffirmed:

> The general purpose of the water code's grant of broad powers to the State Engineer, especially regarding water rights applications, is to employ his or her expertise in hydrology and to manage those applications through an exclusive and comprehensive administrative process that maximizes resources through its efficiency, while seeking to protect the rights and interests of water rights applicants. *See Aamodt*, 111 N.M. at 5, 800 P.2d at 1062 ("The legislature granted the State Engineer broad powers to implement and enforce the water laws administered by him."); *see also* NMSA 1978, § 72-2-1 (1982) (providing that the State Engineer "has general supervision of waters of the state and of the measurement, appropriation, distribution thereof and such other duties as required").

*Lion's Gate Water v. D'Antonio*, 2009-NMSC-057, ¶ 24, 147 N.M. 523, 226 P.3d. 622. Many of the State Engineer's delegated duties already involve administering water based on priority determinations outside of the adjudication process. *See, e.g.*, *Templeton v. Pecos Valley Artesian Conservancy Dist.*, 65 N.M. 59, 61, 69, 332 P.2d 465, 466, 471 (1958) (rejecting the argument that the State Engineer's denial of a permit to change the place of diversion was a de facto adjudication, stating, "[I]t is true that the State Engineer cannot conduct a proceeding to adjudicate the priorities of water rights. However, each time a

permit is granted, the State Engineer has to consider all prior appropriations to determine whether or not there are any unappropriated waters. To that extent, he is required to consider prior appropriations.").

**{35}**     Nor is it improper for the Legislature to vest an agency with quasi-judicial functions. *See Wylie Corp. v. Mowrer*, 104 N.M. 751, 752-53, 726 P.2d 1381, 1382-83 (1986) (overruling *State ex rel. Hovey Concrete Prods. Co. v. Mechem*, 63 N.M. 250, 316 P.2d 1069 (1957) and holding that an administrative agency can address individual rights as a quasi-judicial body); *see also New Energy Econ., Inc. v. Shoobridge*, 2010-NMSC-049, ¶ 14, 149 N.M. 42, 243 P.3d 746 (Within the separation of powers scheme, "we have recognized the Legislature's power to delegate both adjudicative and rule-making power to administrative agencies.").

**{36}**     Accordingly, we hold that AWRM does not violate constitutional separation of powers principles.

## B.     AWRM Does Not Violate Due Process.

**{37}**     Due process requires that "[n]o person shall be . . . deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V; *see* N.M. Const. art. II, § 18. "In order to assert a procedural due process claim . . . , a plaintiff must establish deprivation of a legitimate liberty or property interest and that he was not afforded adequate procedural protections." *Barreras v. N.M. Corrs. Dep't*, 114 N.M. 366, 370, 838 P.2d 983, 987 (1992) (citing *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564 (1972)).

**{38}**     In this case, Tri-State argues that AWRM unconstitutionally deprives it of a water right. Therefore, we must examine both the property interest affected and whether AWRM deprives Tri-State of that interest.

**{39}**     "Property interests . . . are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law." *Roth*, 408 U.S. at 577; *see also Bd. of Educ. of Carlsbad Mun. Schs. v. Harrell*, 118 N.M. 470, 477, 882 P.2d 511, 518 (1994) ("The definition of property centers on the concept of entitlement; therefore, interests in government benefits will be recognized as constitutional 'property' if the person can be deemed 'entitled' to them.").

**{40}**     "Water rights are determined under state law, not federal law." *Hydro Res. Corp. v. Gray*, 2007-NMSC-061, ¶ 16, 143 N.M. 142, 173 P.3d 749. "The prior appropriation doctrine governs water law in New Mexico. *See* N.M. Const. art. XVI, § 2 ('Priority of appropriation shall give the better right.')." *Walker v. United States*, 2007-NMSC-038, ¶ 21, 142 N.M. 45, 162 P.3d 882. "Under the doctrine of prior appropriation, water rights are both established and exercised by beneficial use, which forms 'the basis, the measure and the limit of the right to use of the water.' N.M. Const. art. XVI, § 3." *Walker*, 2007-NMSC-038, ¶ 22. Thus, water "must be appropriated and applied to beneficial use before a vested

11

water right will result." *Hydro Res.*, 2007-NMSC-061, ¶ 21; *see also Walker*, 2007-NMSC-038, ¶ 27 (recognizing a vested water right as a "separate protected property right" that "can be sold, leased, or transferred").

**{41}**     Yet, as this Court has repeatedly recognized, a water right is a limited, usufructuary right providing only "a right to use a certain amount of water to which one has a claim via beneficial use." *See Walker*, 2007-NMSC-038, ¶ 27 (Water is "merely usufructuary; as belonging to the public; as subject to public servitudes; as incapable of full ownership; as subject to constraints that it be used nonwastefully, reasonably, beneficially, etc." (internal quotation marks omitted)); *see also Holguin v. Elephant Butte Irrigation Dist.*, 91 N.M. 398, 402, 575 P.2d 88, 92 (1977) ("[W]ater belongs to the state which authorizes its use. The use may be acquired but there is no ownership in the corpus of the water."), *overruled on other grounds by C.E. Alexander & Sons, Inc. v. DEC Int'l, Inc.*, 112 N.M. 89, 91, 811 P.2d 899, 901 (1991); *State ex rel. Erickson v. McLean*, 62 N.M. 264, 271, 308 P.2d 983, 987 (1957) ("All water within the state, whether above or beneath the surface of the ground belongs to the state, which authorizes its use, and there is no ownership in the corpus of the water but the use thereof may be acquired and the basis of such acquisition is beneficial use. . . . The state as owner of water has the right to prescribe how it may be used."); *State ex rel. Bliss v. Dority*, 55 N.M. 12, 17, 225 P.2d 1007, 1010 (1950) ("The public waters of this state are owned by the state as trustee for the people; and it is authorized to institute suits to protect the public waters against unlawful use, or to bring any other action whether authorized by any particular statute, if required by its pecuniary interests or for the general public welfare." (internal citation omitted)); *Snow v. Abalos*, 18 N.M. 681, 693, 140 P. 1044, 1048 (1914) ("The water in the public stream belongs to the public. The appropriator does not acquire a right to specific water flowing in the stream, but only the right to take therefrom a given quantity of water, for a specified purpose.").

**{42}**     Based on the long-standing principle that a water right entitles its holder to only the use of water according to priority, regulation of that use by the state does not amount to a deprivation:

> Water appropriators and appropriations on each of the artesian basins of the state are numerous. The State is vitally concerned in every appropriation. The need for water is imperative, and often the supply is insufficient. Such conditions lead inevitably to many serious controversies, and demand from the state an exercise of its police power, not only to ascertain rights, but also to regulate and protect them. Regulation, however, is not confiscation.

*McLean*, 62 N.M. at 272, 308 P.2d at 988; *see also Durand v. Reynolds*, 75 N.M. 497, 500, 406 P.2d 817, 819 (1965) ("Although the right to change point of diversion or place of use is an inherent property right incident to the ownership of water rights, it is a right subject to conditions, i.e., it cannot impair other existing rights and it may be enjoyed only when done in accordance with statutory procedure."); *State ex rel. Reynolds v. Mitchell*, 66 N.M. 212,

12

214-15, 345 P.2d 744, 745-46 (1959) ("The reasonable limitations on well location changes imposed by [NMSA 1953, Section 75-11-7 (1953)] do not have the effect of confiscating vested rights.").

**{43}** Over the years, this Court has repeatedly rejected challenges to the State Engineer's statutory authority to regulate water rights. *See, e.g.*, *City of Albuquerque v. Reynolds*, 71 N.M. 428, 439, 379 P.2d 73, 81 (1962) (upholding the authority of the State Engineer to grant conditional water permits in order to avoid impairment); *State v. John W. Myers*, 64 N.M. 186, 193-94, 326 P.2d 1075, 1080-81 (1958) (rejecting the argument that adjudicated water rights were property rights that the State Engineer could not manage in the interests of the public); *Yeo v. Tweedy*, 34 N.M. 611, 612-14, 629, 286 P. 970, 971-72, 977 (1929) (rejecting the argument that the right to drill for well water was a vested property right beyond regulation by the State Engineer).

**{44}** Rather than rebut the State Engineer's long-standing regulatory authority, Tri-State asserts only that water rights cannot be curtailed until they have been adjudicated inter se, relying on the limited holding in *PVACD*, 99 N.M. at 701, 663 P.2d at 360, that "no administration of junior rights as against seniors [can occur] until the parties have had an opportunity to contest priorities *inter se*." We rejected the use of this statement in our analysis of Tri-State's separation of powers claim, and we similarly reject its application here.

**{45}** As this Court made clear in *McLean*,

> [w]hen a land owner exceeds [his water] use, he is appropriating to himself that which belongs to others who are entitled to a like use, and to that extent is obstructing the necessary use of water so as to interfere with its beneficial use. . . . Whatever right one has, even in his own, is subject to that established principle that his use shall not be injurious to the rights of others, or of the general public.

62 N.M. at 273, 308 P.2d at 988-89. A junior water rights holder cannot complain of deprivation when its water is curtailed to serve others more senior in the system, regardless of whether the junior's rights have been formally adjudicated. Such are the demands of our state's system of prior appropriation. Accordingly, we conclude that AWRM does not violate due process based on Tri-State's adjudication theory.

**{46}** Tri-State makes a second facial due process challenge, arguing that AWRM is unconstitutional because the procedures by which a water user can appeal a priority determined under 19.25.13.27 NMAC would take years to complete, during which "[c]rops will fail, livestock could suffer, and industrial and other uses will be shut down." Despite not yet being subjected to AWRM, Tri-State argues that difficulties in appeals from future AWRM determinations are now ripe for review, relying on *New Energy Economy*, 2010-NMSC-049, ¶¶ 15-19 ("[A] rule was ripe for review before it was enforced."). We disagree

13

with both arguments.

**{47}** Among the appellate procedures under AWRM, 19.25.13.27 NMCA provides in pertinent part:

> In all instances where the state engineer makes determinations of priority based on best available evidence as set forth in Subsections A through G below, he shall publish a list of his determination of the water rights in the water master district for review and provide opportunity to affected water right owners to informally present evidence. The state engineer shall hear objections to the water master district manager's determination of an administrable water right in accordance with Section 72-2-16 NMSA. Filing of an objection to the water master district manager's determination of an administrable water right will not stay the state engineer's administration based upon that determination, pending resolution of the objection. Appeals from decisions of the state engineer shall be in accordance with Section 72-7-1 NMSA.

*See also* 19.25.13.30 NMAC (providing procedures for objections to the State Engineer's determination of an administration date); 19.25.13.41 NMAC (providing for appeals of State Engineer decisions). Before we address whether these appellate procedures provide sufficient due process, we must first answer whether Tri-State's challenge is ripe for review.

**{48}** In *New Energy Economy*, this Court recently reviewed a ripeness challenge to an administrative rule that had yet to be promulgated. 2010-NMSC-049, ¶ 1. We explained that, even though the New Mexico Constitution does not include a "cases and controversies" provision for limiting judicial review, our courts nonetheless are "guided by prudential considerations" in requiring an "actual controversy" as a prerequisite to action. *New Energy Economy*, 2010-NMSC-049, ¶¶ 16-17. Thus, when a party challenges an administrative rule or regulation, "even if a purely legal question is presented . . . , it is not justiciable unless it is ripe. . . . [T]he mere possibility or even probability that a person may be adversely affected in the future by official acts fails to satisfy the actual controversy requirement." *Id.* ¶ 18 (internal quotation marks and citation omitted). The purpose of this doctrine is to "prevent[] the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized." *Id.* ¶ 15 (internal quotation marks and citation omitted).

**{49}** The purely legal question Tri-State poses is whether appeals from AWRM determinations would take too long, during which the State Engineer can enforce priorities. Yet the harm Tri-State argues will ensue from AWRM is speculative. Although we recognize the real-life consequences of the prior appropriation system in which crops may fail and industries may suffer when junior users are limited according to priority, Tri-State has yet to be subjected to either a priority determination under AWRM or a subsequent

14

appeal. *See Rio Grande Kennel Club v. City of Albuquerque*, 2008-NMCA-093, ¶ 24, 144 N.M. 636, 190 P.3d 1131 (rejecting as premature a facial claim against a regulation that the city had yet to enforce); *N.M. Petroleum Marketers Ass'n v. N.M. Envtl. Improvement Bd.*, 2007-NMCA-060, ¶ 17, 141 N.M. 678, 160 P.3d 587 (explaining that the appellate procedures in the Occupational Health and Safety Act "do[] not authorize an appellant to appeal on the ground that some other person or class of persons 'is or may be affected by a regulation' in a way that does not also affect the appellant. We hold that Appellants do not have standing to advance arguments based on the hypothetical effect of the regulations."). Thus, Tri-State's argument that it may be faced with harm under AWRM's yet-to-be-implemented appellate procedures is not enough for us to invalidate those procedures under a facial due process claim.

**{50}** Accordingly, we hold that AWRM does not violate due process under either of Tri-State's facial challenges.

## C.      AWRM Is Not Impermissibly Vague.

**{51}** In a third issue before this Court not reached by the courts below, Tri-State argues that allowing the State Engineer to consider the "best available evidence" under 19.25.13.37 NMAC is unconstitutionally vague, relying on *Bokum Res. Corp. v. N.M. Water Quality Control Comm'n*, 93 N.M. 546, 549, 551-52, 603 P.2d 285, 288, 290-91 (1979). We disagree.

**{52}** "A statute will be held unconstitutional in violation of due process of law, if the statute either forbids or requires the doing of an act in terms so vague that men of common intelligence must guess at its meaning and differ as to its application." *State v. Segotta*, 100 N.M. 498, 499, 672 P.2d 1129, 1130 (1983); *see also N.M. Mining Ass'n v. Water Quality Control Comm'n*, 2007-NMCA-084, ¶ 24, 142 N.M. 200, 164 P.3d 81 ("A law must provide fair and adequate warning to a person of ordinary intelligence of the conduct which is prohibited." (internal quotation marks and citation omitted)). "[I]f arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them. A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an *ad hoc* and subjective basis, with the attendant dangers of arbitrary and discriminatory applications." *Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 498 (1982) (quoting *Grayned v. City of Rockford*, 408 U.S. 104, 108-09 (1972)), *recognized by this Court in State v. Ronald Myers*, 2011-NMSC-028, ¶¶ 37, 39, 150 N.M. 1, 256 P.3d 13.

**{53}** In *Bokum*, this Court held that the New Mexico Water Quality Control Commission regulations defining "toxic pollutants" were unconstitutionally vague. 93 N.M. at 548, 603 P.2d at 287. The regulations allowed the director of the Environment Improvement Division to determine that a chemical discharge was a "toxic pollutant" based on whether

those water contaminants, or combinations of water contaminants present in

15

concentrations which, upon exposure, ingestion, inhalation or assimilation into humans or other organisms of direct or indirect commercial, recreational or esthetic value, either directly from the environment or indirectly by ingestion through food chains, will, *on the basis of information available to the director or the commission*, cause death, disease, behavioral abnormalities, genetic mutation, physiological malfunctions or physical deformations in such organisms or their offspring.

*Id.* (citation omitted). Violators were subject to fines ranging from $300 to $10,000 per day or possible imprisonment. *Id.* The challenger argued that the definition was vague in that (1) it provided no discernible standard on which to determine what "direct or indirect commercial, recreational or esthetic value" means; (2) the discharger's acts were being judged by information available only to the director or the commission; (3) this information could be limitless; and (4) there was no way of "determining the reasonableness, reliability or scientific accuracy" of this information. *Id.* at 549, 603 P.2d at 288 (internal quotation marks and citation omitted). Based on all these considerations, the *Bokum* Court concluded that "[c]onceivably, a person could find himself in jail for violating totally unreasonable requirements, that are supported by crank mail in the Director's files, without the discharger of water having any prior notice or knowledge of the information's nature or availability to the Director." *Id.*

**{54}** By contrast, in *N.M. Mining Ass'n*, the Court of Appeals held that a water quality standard defining "surface waters of the State" was not unconstitutionally vague. 2007-NMCA-084, ¶¶ 1, 21. The definition included "all surface waters situated wholly or partly within or bordering upon the state, including lakes, rivers, streams (including intermittent and ephemeral streams), mudflats, sandflats, wetlands, sloughs, prairie potholes, wet meadows, playa lakes, reservoirs or natural ponds." *Id.* ¶ 8. While acknowledging that certain fact-sensitive inquiries may arise, the *N.M. Mining Ass'n* Court nonetheless concluded that the definition "provides persons of reasonable intelligence with constitutionally adequate notice of what waters are subject to regulation as surface waters of New Mexico." *Id.* ¶¶ 26-27. In reaching its holding, the *N.M. Mining Ass'n* Court explained that "[a]n agency drafting regulations is not required to write for the benefit of a deliberately unsympathetic or wilfully obtuse audience: for purposes of due process, a governmental agency attempting to give notice may assume 'a hypothetical recipient desirous of actually being informed.'" *Id.* ¶ 26 (citation omitted).

**{55}** Similarly, in *Segotta*, this Court upheld a section of the criminal sentencing statute allowing a court to determine mitigating and aggravating factors as not unconstitutionally vague. 100 N.M. at 499, 501, 672 P.2d at 1130, 1132. In upholding the section's constitutionality, the *Segotta* Court explained that "the legislature authorized the sentencing court to exercise independent judgment if it determined that extraordinary mitigating or aggravating circumstances were present and such circumstances were supported in the record of the sentencing hearing and the presentence report." *Id.* at 500-01, 672 P.2d at 1131-32 (internal quotation marks and citation omitted).

16

**{56}** In this case, 19.25.13.27 NMAC provides a hierarchy of "best available evidence" that the State Engineer can consider in determining the elements of each administrable water right, of which the lowest in the hierarchy is:

> a determination made by the state engineer based on the best available evidence, consisting of, where available, any filings with the office of the state engineer, field or documentary evidence of beneficial use associated with the right including historical aerial photography, diversions records of historical diversions, historical studies containing evidence regarding water use, and data regarding irrigation and water delivery system requirements.

19.25.13.27(G) NMAC.

**{57}** Unlike the penalties imposed for discharging "toxic pollutants" in *Bokum*, AWRM does not impose either a monetary fine or imprisonment. Rather, the loss incurred is the possibility of a later priority date. Generally, a civil statute without direct penalties requires less precision under a facial vagueness challenge. *See Vill. of Hoffman Estates*, 455 U.S. at 498-99 ("The degree of vagueness that the Constitution tolerates—as well as the relative importance of fair notice and fair enforcement—depends in part on the nature of the enactment. . . . The [United States Supreme] Court has . . . expressed greater tolerance of enactments with civil rather than criminal penalties because the consequences of imprecision are qualitatively less severe.").

**{58}** And unlike the broad definition of "toxic pollutants" in *Bokum*, the types of evidence available to the State Engineer under AWRM are limited both by the express hierarchy of evidence in the regulations and by the examples of evidence that is deemed sufficient under Subsection G: filings with the State Engineer or field or documentary evidence including historical aerial photography, diversion records, historical studies of water use, and data regarding irrigation and water delivery. These categories are neither "limitless" nor unreliable. Rather, they represent the kinds of publicly available evidence the State Engineer deems reasonable and reliable for establishing historical water use.

**{59}** We view the provision in AWRM more akin to the provisions in *N.M. Mining Ass'n* and *Segotta* than in *Bokum*. While we recognize that certain fact-sensitive inquiries may arise, AWRM provides persons of reasonable intelligence with constitutionally adequate notice of what "best available evidence" the State Engineer will consider. As *N.M. Mining Ass'n* stated, we will not require the State Engineer to draft these regulations for the benefit of a deliberately unsympathetic audience. Rather, like the discretion this Court afforded judges in *Segotta*, some independent reasoned judgment on the part of the State Engineer is properly permitted in making priority determinations on the basis of information considered reliable.

**{60}** Accordingly, we conclude that AWRM provides sufficient notice to water rights holders about the types of evidence the State Engineer will consider when making water

17

priority determinations, and we hold that AWRM's hierachy of evidence in 19.25.13.27 NMAC is not unconstitutionally vague.

## IV.  CONCLUSION

**{61}**    We reverse both the Court of Appeals and the district court by holding that AWRM does not violate constitutional separation of powers limitations.  On an issue not reached by the Court of Appeals, we reverse the district court by holding that AWRM does not violate due process.  Finally, addressing an issue not reached by either court below, we hold that AWRM is not unconstitutionally vague.

**{62}    IT IS SO ORDERED.**

 

_____
**CHARLES W. DANIELS, Justice**

**WE CONCUR:**

_____
**PETRA JIMENEZ MAES, Chief Justice**

_____
**RICHARD C. BOSSON, Justice**

_____
**EDWARD L. CHÁVEZ, Justice**

_____
**PAUL J. KENNEDY, Justice**

**Topic Index for *Tri-State Gen. & Trans. Assn., Inc. v. D'Antonio*, No. 32,704**

**ADMINISTRATIVE LAW AND PROCEDURE**
Administrative Appeal
Administrative Law, General
Delegation of Powers
Due Process
Judicial Review
Legislative Intent
Standard of Review

**APPEAL AND ERROR**
Standard of Review

**CONSTITUTIONAL LAW**
Due Process
New Mexico Constitution, General
Separation of Powers
Vague or Overbroad

**GOVERNMENT**
State Engineer

**NATURAL RESOURCES**
Water Law

**STATUTES**
Interpretation
Legislative Intent
Rules of Construction